Commonwealth *v.* Morrison, Appellant.

122

Argued September 26, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*S. Thaddeus Kwiat,* for appellant.

*Damian McLaughlin,* District Attorney, for appellee.

OPINION BY ERVIN, J., November 16, 1955:

Karl E. Morrison, an architect, 67 years of age, was convicted in the court below upon each of four indictments, consolidated for the purpose of trial, charging him with sodomy committed upon four boys ranging between 12 and 17 years of age. After his conviction the defendant's motion for a new trial was refused and he was sentenced on each bill to pay the costs of prosecution and to undergo imprisonment for an indefinite term, the minimum of which was three and one-half years and the maximum seven years, all sentences to run concurrently. He thereupon took this appeal. The court below directed that defendant's appeal should operate in each case as a supersedeas.

The evidence of the Commonwealth consisted principally of testimony of each of the four boys against whom the offenses had been committed. Jack Russell, 17 years of age, testified he had known the defendant approximately three years, that he had been at the defendant's home at 233 Shenley Drive, Erie, Pennsylvania, various times during the three years he had known him and that he had slept at the defendant's home for about a year during that three year period. He testified that on one occasion when he was staying at the home of the defendant he and Roger Sampson had slept one night on a day bed and the next morning he learned from Roger that the defendant had made

improper advances during the night. He stated the following night when he was awake the defendant committed sodomy upon him by taking his private parts into his mouth. He also testified that during the period he had stayed at the home of the defendant there had been about 10 or 12 similar occurrences, the last time being on March 29, 1954. Lloyd Stiffey, also 17 years of age, testified he had known the defendant for about three years and that he had stayed overnight at the home of the defendant. He stated the defendant had committed sodomy upon him; the last time being in September, 1952 at the defendant's home. Richard Russell, 14 years of age, testified he had known the defendant for four or five years. He stated he had slept at the defendant's home 20 times and that the defendant had committed sodomy upon him on four different occasions, all at the defendant's home. He testified the last such occurrence was about eight or nine months prior to the trial. Arthur Russell, 12 years of age, testified he had known the defendant for four years, had slept at his home about 20 times and that on five occasions the defendant committed sodomy upon him.

There was no denial of the offenses by the defendant who did not testify in his own defense. The defense, however, presented 16 witnesses, some of whom testified they had been at the home of the defendant during some of the times when the Russell boys were there and had neither seen nor heard anything improper. Other defense witnesses testified that Jack Russell had stated the police kept a bright light on him for a long period of time until he signed a statement for them. Still other defense witnesses testified they had known the Russell boys but had never heard them make any complaint about the defendant's conduct.

Appellant contends he was denied a fair trial and his legal rights were violated by the refusal of the trial court to withdraw a juror and discharge appellant on the basis that the indictments set forth a March, 1954 date and sundry other times whereas the Commonwealth failed to prove any date in three of the four cases, and in the fourth case established a March 29 date but the year was not determined. This contention is clearly without merit. The Commonwealth is not restricted to proof of the crime on the exact date stated in the indictment. In *Com. v. Levy*, 146 Pa. Superior Ct. 564, 569, 23 A. 2d 97, we said: "It may be conceded that in the prosecution of crimes of the kind here involved the Commonwealth is not required to prove their commission on the date laid in the indictment, but, failing in that, we think it has the burden, in order to sustain a conviction, of proving their commission upon some other date, fixed with reasonable certainty and being within the prescribed statutory period. . . ." See also *Com. v. Mourar*, 167 Pa. Superior Ct. 279, 281, 74 A. 2d 734; *Com. v. Gipe*, 169 Pa. Superior Ct. 623, 626, 84 A. 2d 366. In the instant case the indictments were presented to the grand jury and true bills found on August 31, 1954. The jury could properly consider and convict upon any evidence that showed commission of the crime or crimes charged within two years prior to August 31, 1954. Reference to the testimony of the four complaining witnesses summarized, supra, clearly shows there was sufficient evidence to convict the defendant of the commission of the crime of sodomy on reasonably specific dates within the two year period preceding the exhibition of the bills of indictment to the grand jury on August 31, 1954. See *Com. v. Dixon*, 179 Pa. Superior Ct. 1, 115 A. 2d 811.

Appellant also contends he was deprived of a fair trial because of the improper manner of selecting the

jury and the refusal of the court below to allow questioning of prospective jurors individually. This contention is without merit. The jury was properly called and impanelled. Twelve jurors were called, seated in the box and questioned by counsel as a group. This procedure was followed without objection. The practice of calling jurors in a group is proper in noncapital criminal cases. See *Com. v. DiFilippo,* 176 Pa. Superior Ct. 608, 109 A. 2d 224. As stated by the learned judge of the trial court: "The record indicates clearly that the jury was selected in accordance with the long accepted practice in our courts and without objection." Moreover, the record does not reveal that any request for an oral examination of jurors was made by counsel for defendant. The record does show that counsel for the defendant was permitted to ask questions of the jurors and that the only question he asked was whether any juror was related to the victims in these cases.

Appellant also contends the trial court erred in refusing to continue the cases until an alleged important witness for the defense, who had been subpoenaed and for whom a bench warrant had been issued, could be brought into court. The witness was subpoenaed and directed to appear on September 13, 1954. The trial began on September 14, 1954 and no complaint was made when it was first apparent the witness had not appeared. It was not until the third day of the trial that the absence of the witness was brought to the attention of the trial court, and a bench warrant was then issued. However, the defendant was not prejudiced by the absence of this witness. The record reveals the absent witness was only present at one of the many acts of sodomy which occurred in the home of the defendant and could not have been a material witness in the case on which sentence was imposed. An application for a continuance is addressed to the sound dis-

cretion of the trial court, whose action will not be disturbed in the absence of a manifest abuse of discretion. *Com. v. Niemi*, 365 Pa. 105, 73 A. 2d 713. Where, as here, the ground upon which a continuance is sought is the absence of a witness, whose testimony, if produced, would, at most, amount to a denial of the occurrence of one of several acts of sodomy alleged to have occurred in the presence of the absent witness, involving only one of four victims and such testimony would not be material in the case on which sentence was imposed, the defendant was not prejudiced and the refusal of a continuance was not an abuse of discretion.

Appellant also contends that the remark made by the district attorney to the jury in his summation that: "There has been no denial of these acts, there has been no denial in any manner, shape or form, by anyone, of these acts" constitutes prejudicial error. Appellant considers the above quoted remarks prejudicial error because the crimes charged against appellant could have been denied or contradicted only by the appellant himself, and under the Act of May 23, 1887 he does not have to take the witness stand and his failure to do so may not be treated as creating any presumption against him, nor be adversely commented on by court or counsel during the trial. This contention is also without merit. As stated by Justice BELL in *Com. v. Bolish*, 381 Pa. 500, 522, 113 A. 2d 464: "We have recently decided this very question, adversely to the defendant, in Commonwealth v. Kloiber, 378 Pa. 412, 106 A. 2d 820. We there reiterated—citing many cases in support—that the Court and the district attorney could properly say that the evidence of the Commonwealth was uncontradicted and undenied, but neither the Court nor the district attorney could adversely refer to defendant's failure to take the witness stand or draw an unfavorable inference from his failure to testify."

Appellant also contends he was denied a fair trial by the court's refusal to withdraw a juror and grant a new trial because of remarks made by the district attorney, over objection of counsel for appellant, as to what the effect of their guilty verdict would be and as to the penalty appellant might expect. Where improper remarks of counsel are to form the basis for an appeal, prompt objection and a motion for the withdrawal of a juror must be made, *coupled with a request that the words, as the trial judge understood them, be placed upon the record*; an alternative method of placing the remarks upon the record is by affidavit. *Com. v. Drischler*, 175 Pa. Superior Ct. 74, 103 A. 2d 467. In the instant case, though objection was made by counsel for appellant, and an exception to the overruling of the objection was granted by the trial judge, the record is silent as to the actual remarks and we are therefore unable to properly evaluate them. However, assuming the gist of the alleged prejudicial remarks to be as summarized in the brief of counsel for the appellant that "The District Attorney, . . . said that he felt no ill will towards the defendant and that he did not particularly care that he be punished but rather that he felt sorry for the defendant and that he should be separated from society and that the jury by their verdict should so separate him from society" it does not appear the jury would be influenced to the prejudice of the appellant. Considering the uncontradicted evidence of the commission of many acts of sodomy by the defendant the above quoted remarks might very well have elicited more sympathy for the defendant than he deserved rather than react to his prejudice. Moreover, the defendant was fully protected from any prejudicial effect by the trial court in its charge as follows: "The question of punishment is of no moment if the defendant is innocent and should not enter into

your consideration in weighing the evidence in these cases."

Counsel for the appellant also complains of the reference by the district attorney to the defendant as a "sex pervert" and words of similar import and of statements to the effect that "if the jury allows men like Morrison to be out in society then we never know whose child will be next and that unless he is taken out of society there will be other children who will suffer." It is contended these statements were of such a nature as to excite the passion and prejudice of the jury. The record does not disclose the exact language alleged to have been used. However, assuming the accuracy of the above quoted excerpt from the brief of counsel for the appellant we do not find it to be such that its unavoidable effect would be to prejudice the jury. In *Com. v. Capps*, 382 Pa. 72, 114 A. 2d 338, involving the murder of a young girl after she had been ravished, where the district attorney posed the question to the jury: "What do you do with a mad dog" it was held not to be prejudicial. In any event, the effect of such remarks depends upon the atmosphere of the trial and the proper action to take is largely a matter for the presiding judge to determine. *Com. v. Narr*, 173 Pa. Superior Ct. 148, 96 A. 2d 155. The presiding judge in this case considered the remarks of the district attorney to be within the bounds of legitimate advocacy and we are satisfied there was no abuse of discretion in the refusal to withdraw a juror under the circumstances.

Appellant also complains of the admission in evidence of two letters written by Don Johnson, a witness for the defense, and mailed in the printed business envelopes of the appellant. The testimony concerning these letters is well summarized in the opinion of the court below as follows: "The letters, according to the

commonwealth's testimony, were written to one of the victims while he was in Ohio where he went in pursuance to a plan, suggested and urged by the defendant upon the victim in the presence of Johnson following defendant's arrest on this charge. In furtherance of defendant's purpose to keep the victim out of Pennsylvania, he transferred an automobile to Johnson which immediately was reassigned by him to the victim, who then proceeded in the automobile across the state line into Ohio, where he remained for several days. One letter (postmarked Erie, Pa., May 25 and Conneaut, Ohio, Gen. Del. May 26) requests the victim 'If near a phone, call *22414* reverse.' (The number on argument was admitted to be that of defendant). The letter also advises 'Everything is fairly quiet here & under *control'\** and concludes 'P.S. And please keep *entirley* out of Pa.'\* The other letter (postmarked Erie, Pa., May 27 and Conneaut, Ohio, Gen. Del. May 28) forwarded money as the defendant had previously promised, and in typewriting begins 'Enclosed is money order.' The words 'money order' are crossed out and above them is written 'no time to get money order. Enclosed is cash.' Included also is the typewritten direction 'Meantime stay over there out of sight.' "

We are in agreement with the conclusion of the learned judge of the court below that "All the attending circumstances and the letters themselves indicate clearly that they are the acts of the defendant and the device used by him to accomplish his purpose and to carry out his plan. The letters are links in the chain of circumstances corroborating commonwealth's evidence and are, therefore, properly admissible. See Commonwealth v. Marion, 232 Pa. 413."

Nor is there any merit to appellant's contention he was denied a fair trial by the refusal of the trial court to withdraw a juror because of local newspaper ac-

counts published during the trial and referring to defendant's previous conviction and sentence for a similar offense. This assertion was made in appellant's motion for a new trial. It is within the discretion of the trial court to determine whether a continuance should be allowed or a new trial granted on the ground of newspaper publicity unfavorable to the defendant. *Com. v. Harrison,* 137 Pa. Superior Ct. 279, 8 A. 2d 733. "In such matters, the court below is in a better position to determine whether the case should be postponed or a new trial granted, and the propriety of its action cannot, therefore, be questioned." *Com. v. Deni,* 317 Pa. 289, 176 A. 919. In the instant case it does not appear that the newspaper articles complained of had in any way prejudiced the defendant at the trial. The record fails to disclose that any juror read any of the articles. Moreover, the jury was specifically and repeatedly admonished by clear and forcible instructions to try the case on the evidence alone without being influenced by any other consideration.

Appellant also complains in this appeal of the denial of his petition for writ of coram nobis. No appeal was taken from the order of the court below dismissing the petition and the said order is not properly before us now.

The contentions of appellant to the effect that the evidence was insufficient to sustain the conviction and that the charge of the trial judge was inadequate are equally without merit. The record reveals ample evidence to sustain the conviction. As to the alleged inadequacy of the charge to the jury it is noted that counsel for appellant took only a general exception to the charge. He did not ask for elaboration of the charge in any particulars nor did he request additional instructions. A reading of the charge in its entirety clearly demonstrates its accuracy and fairness.

We have carefully reviewed the entire record and are of the opinion that appellant was given a fair trial and his rights were fully protected.

The judgment is affirmed, and it is ordered that appellant appear in the court below at such time as he may there be called, and that he be by that court committed until he has complied with his sentence or any part of it which had not been performed at the time the appeal was made a supersedeas.